No. 25-60065

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

**AUSTIN M. PULLIAM,**

*Plaintiff - Appellant*

**VERSUS**

**BENTON COUNTY SCHOOL DISTRICT; JADA RICH,**

*Defendants - Appellees*

_____

**REPLY BRIEF OF APPELLANT**

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

Honorable Judge Michael P. Mills, United States District Judge

JIM WAIDE, MS Bar No. 6857
waide@waidelaw.com
RACHEL PIERCE WAIDE, MS Bar No. 100420
rpierce@waidelaw.com
YANCE FALKNER, MS Bar No. 106107
yfalkner@waidelaw.com
WAIDE & ASSOCIATES, P.A.
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone

ATTORNEYS FOR PLAINTIFF-APPELLANT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................ii

TABLE OF AUTHORITIES...............................................................................iii

ARGUMENTS ...................................................................................................... 1

    I.      ISSUES OF MATERIAL FACT EXIST AS TO
           WHETHER PULLIAM'S FIRING VIOLATED TITLE VII ............ 1

    II.     PULLIAM DID NOT WAIVE RELIANCE ON *BOSTOCK
           V. CLAYTON CTY., GA*., 590 U.S. 644 (2020), NOR DID
           HE WAIVE HIS CLAIM THAT THERE WAS A LACK
           OF GOOD CAUSE FOR HIS FIRING UNDER STATE LAW ........ 7

CERTIFICATE OF SERVICE ........................................................................... 11

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ....... 12

# TABLE OF AUTHORITIES

**Federal Court Cases**

*Atl. Mut. Ins. Co. v. Truck Ins. Exch.,* 797 F.2d 1288 (5th Cir. 1986) .................... 9

*Babb v. Wilkie*, 589 U.S. 399 (2020) ................................................................... 7

*Bostock v. Clayton Cty., Ga.*, 590 U.S. 644 (2020) ................................ 1, 2, 7, 8, 9

*Croley v. Matson Nav. Co.*, 434 F.2d 73 (5th Cir. 1970) ......................................... 4

*Elder v. Holloway*, 510 U.S. 510 (1994) ................................................................ 8

*Garcia v. City of Houston*, 201 F.3d 672 (5th Cir. 2000) ........................................ 1

*Hibernia Natl. Bank v. Administracion Cent. Sociedad Anonima,*
   776 F.2d 1277 (5th Cir. 1985) ............................................................................ 8

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332 (5th Cir. 2005) ............................ 8

*McCulloch v. Glasgow,* 620 F.2d 47 (5th Cir. 1980) ................................................ 3

*Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024) ....................................................... 7

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ......................... 5

*Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500 (1957) ............................................. 6

*Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010) ................................................ 7

*U.S. Postal Serv. Bd. of Governors v. Aikens*,
   460 U.S. 711 (1983) ............................................................................................ 4

*Yee v. City of Escondido, Cal.,* 503 U.S. 519 (1992) .............................................. 7

**Statutes and Rules**

FED. R. CIV. P. 56(f)(2) ............................................................................................ 8

42 U.S.C. 2000e-2(m) .............................................................................................. 1

# ARGUMENTS

**I.  ISSUES OF MATERIAL FACT EXIST AS TO WHETHER PULLIAM'S FIRING VIOLATED TITLE VII.**

The School District realizes that employers may not fire a white person for conduct which would have been tolerated if committed by a black person. *Bostock v. Clayton Cty., Ga.*, 590 U.S. 644, 658 (2020). Therefore, the School District denies that Pulliam's benign, non-racist use of the term "nigga" was the reason for the firing. The School District wants this Court to find as fact that the three (3) alleged ethical violations are the "but-for" cause of Pulliam's firing. Appellees' Brief, p. 21.

Even if the three (3) ethical violations were one "but-for" cause of the termination, summary judgment would not be appropriate. "Often, events have multiple but-for causes." *Bostock v. Clayton Cty., Ga.*, 590 U.S. 644, 656 (2020). "Under Title VII, an unlawful unemployment practice is established when the complaining party establishes that race . . . was a motivating factor for the employment practice, *even though* other factors also motivated the practice." *Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000). "An unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. §2000e-2(m).

There is an issue of material fact as to whether Rich's racial prejudice caused Pulliam's firing. A jury could find that race did cause the firing, because Principal

1

Bush testified that had it not been for Rich's complaints about Pulliam, Pulliam "would still be employed." ROA. 608. Superintendent Biggers agreed that Pulliam's firing was wholly based on Rich's complaints. ROA. 552.

A jury could find that even if ethical violations existed, these violations were not the sole reason Pulliam was fired. Superintendent Biggers noted that a violation of the code of ethics does not, by any measurable standard, always lead to termination. Whether to terminate is a wholly subjective decision. *See* ROA. 547 ("I do agree that if it had just been the tobacco . . . there would be a consequence that were lesser than automatic termination, yes.").

Another fallacy in the School District's argument is its assumption that the term "nigger," has the same meaning as the term "nigga," which is often used in a non-racist fashion. Whether Rich actually believed Pulliam was using a racist term, or whether she knew that the use of the term was benign and non-racist, was a fact question for the jury.

The School District's argument that Pulliam did not offer proof that black persons would not have been fired for the same reason ignores Rich's own testimony that she was "not for white folks using the term 'nigga.'" ROA. 529. *Bostock v. Clayton Cty., GA.,* 590 U.S. 644, 658 (2020), holds that "an employer who intentionally treats a person worse because of sex – such as by firing the person for actions or attributes it would tolerate in an individual of another sex – discriminates

against that person in violation of Title VII." It is inescapable, therefore, that treating a white person worse than a black person who commits the same conduct is illegal discrimination.

The School District argues that there was no evidence that Rich wanted Pulliam terminated. However, Rich herself testified that she did not feel comfortable working in the same classroom with Pulliam. Working in the same classroom was part of Rich and Pulliam's respective job duties. ROA. 789, R.E. 6. Rich also testified she did not want to work with Pulliam anymore. ROA. 584. A reasonable jury could infer, therefore, that Rich wanted some harm to come to Pulliam because of her complaints about him. Rich did not have to foresee that the district was going to terminate Pulliam because of her complaints. An analogous case, *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980), states:

> Foreseeability applies only in negligence cases. An intentional tortfeasor is held to a higher standard in Mississippi . . . Moreover, even if defendant's liability is predicated solely on negligence under Mississippi law the particular harm to plaintiff need not be foreseeable.

Thus, if Rich wanted some harm to come to Pulliam, it is surely not a defense that she wanted a lesser harm than termination.

A jury may infer that Rich intended to harm Pulliam because of the lack of any reasonable explanation of any other purpose. Furthermore, if Rich really did not want Pulliam fired, then a jury may infer that she would have asked the School

3

District not to fire Pulliam when she sent the letter or at some time before a decision was made to fire him.

The School District again asks the Court to engage in fact finding, because it asks the Court to find that Rich did not lie or mislead. Appellees' Brief at 22-27. There are several examples of Rich's making statements which a reasonable jury could find were lies. Rich told two different stories about the role of tobacco in the firing. She complained about Pulliam's criticizing a co-employee, when she herself had criticized a co-employee. She falsely claimed Pulliam used the term "monkey." The heart of her letter was fabricated, since it was intended to make Pulliam appear to be a racist, when Rich knows that Pulliam is the opposite of a racist. Indeed, the main incident Rich complains about is Pulliam's saying the word "nigga," a comment which was uttered in a vehicle in which Pulliam was driving Rich to lunch.

Whether Rich was lying was for a jury. "Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue." *Croley v. Matson Nav. Co.*, 434 F.2d 73, 77 (5th Cir. 1970). "The state of a man's mind is as much a fact as the state of his digestion." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

The School District claims Rich's lies are immaterial because those lies were not the reason for Pulliam's termination. Appellees' Brief, p. 23. Bush, though, unequivocally testified that the term "nigga," was the reason for Pulliam's termination, and if a jury, as fact finder, finds that Rich's letter was a scheme to get Pulliam fired for racist reasons, then, the fact that she lied is material. The fact that she lied is also material because this Court can infer discriminatory intent from Rich's dishonesty. An inference of a discriminatory intent is "consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). (internal citations omitted.)

Contrary to the School District's argument, there is ample circumstantial evidence that Rich's motivation was racial. In the space of seven (7) days, Rich made several statements from which a racial motivation could be inferred. ROA. 135. Rich asked Pulliam for whom he voted and volunteered that "Trump is a racist." ROA. 10. A jury could infer that Rich's opinion that Trump is a racist may mean that she also considers one who votes for Trump to be racist. Rich posted "white silence condones white violence." ROA. 647, 965. From this statement, a jury could infer that Rich believes that a white person like Pulliam, who does not talk about politics, is racist. ROA. 687, 965. Rich even claimed to believe it was "wrong for

5

Pulliam to try to be friends with her." ROA. 585. A jury could reasonably infer that a racist explanation is the most likely explanation for why Rich would not want to be friends with Pulliam, since presumably, a non-racist person would want to be friends with all her co-workers.

Pulliam suffered an adverse employment action because Rich made a complaint, and Rich had no non-racist basis for a complaint.

Defendants argue "as to Rich, Judge Mills explained that even assuming Ms. Rich intentionally fabricated two of the five alleged code violations . . . there is no evidence to say that she did so because of Coach Pulliam's race." ROA. 1019. Appellees' Brief, p. 18.

However, there is circumstantial evidence that Rich's motivation for her fabrications was race. ROA. 135. She made several statements from which a jury could reasonably find that she entertained a racial animus against white persons. She devised a race based scheme to claim racism by Pulliam when she knew he was the opposite of racist.

Pulliam was not required to produce direct evidence that Rich admitted a racist motivation. The jury could infer Rich's motivation since "circumstantial evidence is not only sufficient but also may be more certain, satisfying and persuasive than direct evidence." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 508 n. 17 (1957). "[E]ven in criminal cases, where a conviction requires proof beyond a reasonable doubt,

6

circumstantial evidence is sufficient to support a conviction." *Smith v. Xerox Corp.*, 602 F.3d 320, 331 (5th Cir. 2010).

Pulliam is not required to prove that the School District as the employer had any racial animosity against Pulliam. *Murray v. UBS Sec., LLC*, 601 U.S. 23, 34 (2024), noted that in *Babb v. Wilkie*, 589 U.S. 399, 405 (2020), the U.S. Supreme Court had explained that the normal definition of discrimination is differential treatment. In *Bostock*, the Court likewise observed that discrimination typically means to make a difference in treatment or favor of one as compared to other. *Bostock* makes clear that a lack of animosity is irrelevant to a claim of discrimination under Title VII.

## II. PULLIAM DID NOT WAIVE RELIANCE ON *BOSTOCK V. CLAYTON CTY., GA.*, 590 U.S. 644 (2020), NOR DID HE WAIVE HIS CLAIM THAT THERE WAS A LACK OF GOOD CAUSE FOR HIS FIRING UNDER STATE LAW.

The School District argues that Pulliam has waived his arguments concerning *Bostock* and has waived any state law claim of discharge without just cause.

"Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido, Cal.,* 503 U.S. 519, 534 (1992). Pulliam is not raising a new *claim* but arguing his case with additional authority. Pulliam is entitled to formulate any argument he likes in support of his claims on appeal. *Yee*, 503 U.S. at 535.

*Elder v. Holloway*, 510 U.S. 510, 512 (1994), held that it was error to refuse to consider precedent that the parties had failed to cite in the district court, since cases should be decided "in light of all relevant precedents, not simply those cited to, or discovered by, the district court." As Justice Ginsburg noted in *Elder*, "question[s] of law . . . must be resolved *de novo* on appeal." *Elder*, 510 U.S. at 516.

It is especially inappropriate to credit these arguments since a court can grant a summary judgment motion on grounds not raised by a party. FED. R. CIV. P. 56(f)(2). Fully accepting the School District's waiver argument would mean that a plaintiff would not be allowed to file a brief on appeal but should simply "cut and paste" whatever briefs were filed in the District Court.

The claim that Pulliam waived any argument based on *Bostock* is incorrect because Pulliam brought *Bostock* to the District Court's attention in a post-brief motion requesting oral argument. By filing this motion citing *Bostock*, Pulliam alerted the District Court to the *Bostock decision*, "to such a degree that the district court has an opportunity to rule on it." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005).

The School District's waiver argument should be strictly construed, since it is inconsistent with a basic principle that a "motion for summary judgment cannot be granted simply because there is no opposition." *Hibernia Natl. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

If a plaintiff cannot suffer summary judgment simply because he makes no opposition, it is illogical to hold that summary judgment can be imposed if the plaintiff made opposition that did not cite a particular case, and did not argue a specific argument in great detail. This is especially true here, where the argument of a lack of cause for discharge is subsumed in Pulliam's arguments that racism motivated his firing.

Even if this Court finds Pulliam did not cite *Bostock* soon enough, this Court can still consider the case since "it involves a purely legal question," which can be considered even if not raised below. *See, Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1293 (5th Cir. 1986).

The District Court was sufficiently alerted to Pulliam's argument that there was no cause for his discharge. The briefs below discussed whether Pulliam was fired for racist reasons or for ethical violations. These arguments overlap the argument that there was no "just cause" for Pulliam's being fired.

In two footnotes, the School District claims that Pulliam did not submit "argument and/or evidence" to the District Court, concerning certain statements by Rich. Appellees' Brief at p. 30, n.1, 2.

In fact, the evidence was submitted to the District Court. Rich's statements regarding President Trump were included in the *sworn* Complaint and discussed throughout Pulliam's deposition. ROA.10, s*ee, e.g.,* ROA.508 ("[Rich] said, Well I

voted for Joe Biden because Donald Trump's a racist."). Rich's Facebook post was also included in the summary judgment briefing. ROA. 500, 647.

## CONCLUSION

This Court should reverse the District Court's ruling on summary judgment since this case involves issues of material fact.

Respectfully submitted on this the 18th day of July, 2025.

        AUSTIN PULLIAM, Plaintiff-Appellant

By: */s/ Jim Waide*
   JIM WAIDE, MS Bar No. 6857
   waide@waidelaw.com
   RACHEL PIERCE WAIDE,
   MS Bar No. 100420
   rpierce@waidelaw.com
   YANCE FALKNER, MS Bar No. 106107
   yfalkner@waidelaw.com
   WAIDE & ASSOCIATES, P.A.
   Tupelo, MS 38804-3955
   Post Office Box 1357
   Tupelo, MS 38802-1357
   (662) 842-7324 / Telephone
   (662) 842-8056 / Facsimile

   ATTORNEYS FOR PLAINTIFF-APPELLANT

# CERTIFICATE OF SERVICE

This will certify that undersigned counsel for Plaintiff-Appellant has this day filed the above and foregoing **Reply Brief of Appellant** with the Clerk of the Court, utilizing this Court's electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

**Daniel J. Griffith, Esq.**
**Katherine P. McClellan, Esq.**
**Jacks Griffith Luciano, P.A.**
**P.O. Box 1209**
**Cleveland, MS  38732**
**dgriffith@jlpalaw.com**
**katie@jlpalaw.com**
**vsmith@jlpalaw.com**
**aluciano@jlpalaw.com**
**mlott@jlpalaw.com**
**lajan@jlpalaw.com**

So certified, this the 18th day of July, 2025.

                                                */s/ Jim Waide*
                                                JIM WAIDE
                                                Attorney for Plaintiff-Appellant

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,298 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Corel WordPerfect Office X6, in 14-point Times New Roman font (except for footnotes, which are in 12-point Times New Roman font, as permitted by Fifth Circuit Rule 32.1).

3. The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), the typeface requirements of Fed. R. App. P. 32(a)(5), or the type style requirements of Fed. R. App. P. 32(a)(6) may result in the Court's striking the brief and imposing sanctions against the person signing the brief

So certified, this the 18th day of July.

*/s/ Jim Waide*
JIM WAIDE
Attorney for Plaintiff-Appellant